UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAQUIN MURILLO,<br><br>    Plaintiff,<br><br>    v.<br><br>K. HOLLAND, et al.,<br><br>    Defendants. | No. 1:15-cv-00266-DC-SCR (PC)<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. Nos. 147, 153) |

Plaintiff Joaquin Murillo is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On July 29, 2024, the assigned magistrate judge issued findings and recommendations recommending that Defendants' motion for summary judgment (Doc. No. 147) be denied because there are genuine issues of material fact on the questions of whether Defendants Warden K. Holland and Deputy Warden J. Gutierrez are entitled to qualified immunity and whether they acted with deliberate indifference to a serious risk of harm to inmate safety when responding to inmate complaints of sleep deprivation caused by noisy "Guard One" welfare checks, in which prison guards strike a metal plate on each cell door with a metal pipe every 30 minutes. (Doc. No. 153.) The pending findings and recommendations were served on the parties and contained notice that any objections thereto were to be filed within fourteen (14) days after service. (*Id.* at 30.) On

1  August 12, 2024, Defendants filed objections to the pending findings and recommendations.

2  (Doc. No. 155.) Plaintiff did not file a response thereto or objections of his own.

3  In their objections, Defendants primarily argue that "the magistrate judge erred in finding

4  that the rationale in *Rico v. Duarte* [980 F.3d 1292 (9th Cir. 2020)] does not apply to the facts in

5  this case," and when properly applied to this case, the Ninth Circuit's qualified immunity holding

6  in *Rico* "compels the conclusion that existing case law did not provide Defendants Holland and

7  Gutierrez with notice that creating noise while conducting court-ordered suicide-prevention

8  welfare checks was unlawful." (*Id.* at 1, 3.) Having considered Defendants' arguments, the

9  undersigned is not persuaded that the findings and recommendations improperly focused on the

10 specific facts and circumstances in *Rico*, namely the unique design of the Pelican Bay prison

11 where the plaintiff in *Rico* was incarcerated, (*id.* at 4–6), because the Ninth Circuit itself

12 emphasized these distinctions in the *Rico* decision. Specifically, the Ninth Circuit emphasized the

13 unique features in the Pelican Bay prison that contributed to the noise level of the welfare checks:

> Compared to Guard One's use in other [California Department of Corrections and Rehabilitation ("CDCR")] prisons, conducting the checks creates more noise at Pelican Bay because of the building's circular design. While many other CDCR facilities are arranged along a straight hall, Pelican Bay's [Security Housing Unit ("SHU")] contains six pods arranged around a circular core. The door to each pod is made of metal. Inside each pod, two floors of four cells line one side of the pod. Metal stairs connect the two floors of cells on the other side. The door to each cell is also made of metal.
>
> Each time a pod door opens and closes, the door makes a loud noise for approximately twelve seconds. When the door fully closes, it makes a loud sound that resonates through the walls. Inmates can hear the doors of all six pods opening and closing. As the officers conduct their rounds, inmates can also hear the noise of the officers' boots on the metal stairs and the metal-on-metal noise of the wands hitting the discs on every cell in their own pod and the two neighboring pods.

24 *Rico v. Ducart*, 980 F.3d 1292, 1295–96 (9th Cir. 2020). In its qualified immunity analysis, the

25 Ninth Circuit relied on these structural features in reaching its conclusion that "*on the specific*

26 *facts presented here*, every reasonable official would not have understood that how they

27 performed the court-ordered Guard One checks violated the Constitution." *Id.* at 1299 (emphasis

28 added). The Ninth Circuit further explained:

2

> Our mandate to examine the particular facts, including what caused Rico's alleged sleep deprivation, reveals that the challenged noise arose from activity that was inherently noisy in a facility the very construction of which made difficult quietly conducting round-the-clock welfare checks that defendants were ordered by the *Coleman* court [*Coleman v. Brown*, No. 2:90-cv-0520-KJM-DAD, Doc. 5271 (E.D. Cal. Feb. 3, 2015)] to perform.
>
> …
>
> Existing caselaw did not provide insight into the lawfulness of creating noise while conducting court-ordered suicide-prevention welfare checks in a maximum security facility built of concrete, metal, and steel.

*Id.* Moreover, the Ninth Circuit emphasized that the plaintiff's allegations in *Rico* also focused on the structural design of Pelican Bay prison and the impact of that design on the noise level of the welfare checks:

> According to Rico's allegations, much of the noise that kept him awake resulted from the design of the Pelican Bay SHU and use of the Guard One system in and of itself—not the allegedly haphazard implementation of that system by the floor officers. Rico blames much of the noise on the metal doors of the pods, the metal-on-metal contact of the Guard One wands with the metal discs, the metal staircases, and the circular design of Pelican Bay's SHU. He alleges that the layouts of SHUs in other facilities are quieter, so inmates do not hear as many pod doors opening and closing, the metal pipes hitting the metal discs on as many cells, officers who must use metal staircases within the pods, and the same degree of reverberation with the cell walls. While the officers may have made extra noise by rushing to complete the checks, the officers were undoubtedly and unavoidably going to make noise simply by complying with the court-mandated use of the Guard One system within the SHU at Pelican Bay. Pelican Bay's circular layout required the floor officers to travel up and down the metal stairs to check the inmates confined on the lower and upper levels of the pods. Assuming perfect implementation of the system, inmates were still susceptible to being awoken every hour each night when heavy entry doors to the pods opened and closed.

*Id.* at 1301–02. Thus, the findings and recommendations appropriately considered the specific facts of *Rico* in assessing whether the holding that the defendants were entitled to qualified immunity in that case applies to this case, such that Defendants Holland and Gutierrez are similarly entitled to qualified immunity. Notably, the findings and recommendations discuss the lack of evidence regarding California Correctional Institution ("CCI")'s design, including no evidence that CCI's SHU (where Plaintiff was housed) "is designed in a way that would result in

3

1    excessive noise if officers were not using Guard One by banging on the cell doors." (Doc. No.
2    153 at 21.) In addition, Plaintiff does not allege that noise inherent in the design of CCI
3    contributed to his sleep deprivation. (*Id.*) Rather, according to Plaintiff, the excessive noise was
4    caused by guards banging the metal pipe extra hard on their cell doors, especially if inmates
5    complained about the noise, and guards used these noisy checks as "a torture weapon to get the
6    inmates to complain so as to get the checks to stop" because the guards did not want to use the
7    Guard One system. (*Id.*) These factual differences serve to distinguish this case from *Rico*, and
8    the undersigned agrees with the magistrate judge's analysis of the applicability of that decision.

9        Defendants also argue that the magistrate judge erred in finding genuine disputes of
10   material fact exist regarding whether Defendants acted with deliberate indifference because "there
11   are no facts in dispute that the inmate grievances at CCI were investigated and conducted
12   according to policy and that the Guard One complaints were not substantiated." (Doc. No. 155 at
13   10.) The undersigned is not persuaded by Defendants' argument, however, because as the
14   magistrate judge correctly noted, the evidence before the court on summary judgment does not
15   support Defendants' broad proposition that the Guard One complaints were investigated and not
16   substantiated. (Doc. No. 153 at 29.) In particular, the undisputed facts merely showed that
17   Defendants "had visited the SHU on some occasions when Guard One was being used, and that
18   Defendants were told, possibly only once, by a supervisor that floor officers were using Guard
19   One appropriately." (*Id.*) Contrary to Defendants' assertion, this evidence is not sufficient to
20   show that the Guard One complaints were investigated and were not substantiated, especially
21   when considering that at least 100 individual inmates complained about sleep deprivation due to
22   the use of the Guard One welfare check system at CCI. (*Id.* at 13, n.8.) Thus, the magistrate judge
23   did not err in concluding that disputes of material fact exist regarding the severity of the sounds
24   generated by the use of Guard One at CCI and whether Defendants' response to inmate
25   complaints about that noise demonstrated deliberate indifference to a serious risk of harm to
26   inmate safety.

27       In sum, Defendants' objections do not provide a basis upon which to reject the findings
28   and recommendations.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 304, the court has conducted a *de novo* review of this case. Having carefully reviewed the entire file, including Defendants' objections, the court concludes that the findings and recommendations are supported by the record and proper analysis.

Accordingly:

1. The findings and recommendations issued on July 29, 2024 (Doc. No. 153) are adopted in full;

2. Defendants' motion for summary judgment (Doc. No. 147) is denied; and

3. This matter is referred back to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:   **December 4, 2024**                    _____
                                                  Dena Coggins
                                                  United States District Judge